IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOSAID TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SONY ERICSSON MOBILE ) <br> COMMUNICATIONS (USA), INC. and ) <br> HTC AMERICA, INC., ) <br> ) <br> Defendants. ) | Civ. No. 11-598-SLR |

Richard D. Kirk, Esquire and Stephen B. Brauerman, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Steven G. Hill, Esquire and Douglas R. Kertscher, Esquire of Hill, Kertscher & Wharton, LLP.

Rodger D. Smith II, Esquire of Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant Sony Ericsson Mobile Communications (USA), Inc. Of Counsel: John H. McDowell, Jr., Esquire and James V. Mahon, Esquire of Andrews Hurth LLP.

John G. Day, Esquire, Lauren E. Maguire, Esquire and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendant HTC America, Inc. Of Counsel: Craig Summers, Esquire, Irfan A. Lateef, Esquire, and Phillp Bennett, Esquire of Knobbe, Martens, Olson & Bear, LLP.

**MEMORANDUM OPINION**

Dated: August 16, 2012
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

On July 7, 2011, plaintiff Mosaid Technologies, Inc. ("plaintiff") filed a complaint for patent infringement against defendants Sony Ericsson Mobile Communications (USA), Inc. ("Sony") and HTC America, Inc. ("HTC") (collectively, "defendants") alleging infringement of its U.S. Patent Nos. 5,650,770 ("the '770 patent"), 6,198,390 ("the '390 patent"), and 6,518,889 ("the '889 patent"). (D.I. 1) Thereafter, on July 27, 2011, plaintiff amended its complaint to add allegations of infringement of its U.S. Patent No. 5,963,130 ("the '130 patent"). (D.I. 7) The parties separately answered the amended complaint on August 29, 2011. HTC brings affirmative defenses of noninfringement, invalidity, express or implied license, patent exhaustion, laches, waiver, and/or estoppel, and collateral estoppel. (D.I. 9) HTC also asserts counterclaims for declaratory judgment of express or implied license, patent exhaustion, and noninfringement and invalidity of each asserted patent. (*Id.*) Sony brings affirmative defenses of noninfringement, invalidity, issue preclusion, and laches, estoppel and/or unclean hands, failure to mark and unenforceability due to inequitable conduct. (D.I. 11) Sony asserts counterclaims for declaratory judgment of noninfringement, invalidity, and unenforceability, and for a declaration that this is an exceptional case warranting the issuance of its attorney fees. (*Id.*) Sony amended its answer on September 20, 2011, adding further details regarding its inequitable conduct claim, as well as defenses of patent exhaustion and express or implied license and a counterclaim of patent exhaustion. (D.I. 17) Defendants jointly filed a motion to transfer this litigation to the United States District Court for the Northern District of California on November 1, 2011.

(D.I. 20) That motion is currently before the court. The court has jurisdiction to hear this motion pursuant to 28 U.S.C. § 1338. Venue is appropriate pursuant to 28 U.S.C. § 1400(b).

## II. BACKGROUND

Plaintiff is a Canadian corporation with its principal place of business in Ottawa, Onterio and a principal United States place of business in Plano, Texas. (D.I. 7 at ¶ 1) Plaintiff is the owner by assignment of the '770, '390, '889 and '130 patents at issue in this case (hereinafter, collectively the "patents-in-suit"). (D.I. 28 at 3) HTC is a Washington corporation with its principal place of business in Bellevue, Washington.[1] (D.I. 9 at 8) Sony is a Delaware corporation with its principal place of business in Atlanta, Georgia. (D.I. 11 at 13)

The patents-in-suit were previously owned by Zoltar Satellite Alarm Systems, Inc. ("Zoltar"), which brought two previous litigations: (1) in 2001, a case in the Northern District of California asserting the '770, '390 and '130 patent against Snaptrack, Inc. and Qualcomm, Inc. ("*Zoltar I*"); and (2) in 2005, a case in the Eastern District of Texas asserting all of the patents-in-suit against LG Electronics Mobile Communications Company, LG Electronics, Inc., AudioVox Communications Corporation, Utstarcom, Inc., Utstarcom Personal Communications, Sanyo North America Corporation, Sanyo Electric Company, Inc., Palmone, Inc., Wherify Wireless, Inc. and Sprint Corporation ("*Zoltar II*"). (D.I. 21 at 2; D.I. 28 at 4) *Zoltar II* was transferred to the Northern District of California in November 2005. Both cases were assigned to Chief Judge Ware of that

---

[1] HTC does not contest personal jurisdiction of this court over it. (D.I. 9 at ¶¶ 3, 6)

court. Final judgment was entered in *Zoltar I* in December 2006 following a jury verdict of noninfringement on two patents and the grant of JMOL on the remaining patent. (D.I. 22, ex. B, ex. D) *Zoltar II* was terminated in February 2009 due to settlement. (*Id.*, ex. I) Defendants emphasize that Chief Judge Ware issued four claim construction orders in the prior cases, and is extensively familiar with the patents. (D.I. 21 at 2-5; D.I. 22, ex. F at 5-6; ex. H)

## III. STANDARDS

Since the Act of 1897, when Congress first enacted what is now 28 U.S.C. § 1400(b),[2] any civil action for patent infringement could be brought in the judicial district in which the defendant was incorporated. Indeed, until 1990, the words "inhabitant" (used prior to 1948) and "resident" (used since 1948), as those words relate to corporate venue in patent infringement cases, were limited to "the state of incorporation only." *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir.1990). In 1990, the Federal Circuit in *VE Holding* interpreted the 1988 amendment to the general venue statute, 28 U.S.C. § 1391(c), as supplementing the specific provisions of § 1400(b). More specifically, § 1391 was amended to broaden the general

---

[2]Section 1400(b) provides:

> (b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

venue provision for corporations:[3]

> (c) **For purposes of venue under this chapter,** a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

(Emphasis added) The Federal Circuit held that the emphasized language above clearly indicated that § 1391(c), on its face, applied to § 1400(b), "and thus redefine[d] the meaning of the term 'resides' in that section." 917 F.2d at 1578. As recognized by the Federal Circuit, "[v]enue, which connotes locality, serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred. . . . The venue statutes achieve this by limiting a plaintiff's choice of forum to only certain courts from among all those which might otherwise acquire personal jurisdiction over the defendant." *Id.* at 1576 (citation omitted).

Since 1948, 28 U.S.C. § 1404(a) has given district courts the authority to "transfer any civil action to any other district or division where it might have been brought." According to the Supreme Court, § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. Thus . . ., the purpose of the

---

[3]Before the 1988 amendment, § 1391(c) provided:

> (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

4

section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .' To this end, it empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1069)). The Supreme Court has urged a "common-sense approach" to application of the statute, as it was designed as a "federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms." *Id.* at 623, 636-37. *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). Consistent with Federal Circuit precedent characterizing motions to transfer pursuant to § 1404(a) as procedural matters, the law of the regional circuit provides the governing standards. *In re Link_A-Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011); *see gen. Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984).

Consistent with the Supreme Court's jurisprudence on § 1404(a), "§ 1404(a) accords broad discretion to district court[s]" and "directs [such courts] to take account of factors other than those that bear solely on the parties' private ordering of their affairs. [A] district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the 'interest of justice.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Likewise, the United States Court of Appeals for the Third Circuit has directed district courts to consider "many variants of

the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (hereinafter, "*Jumara*").

In *Jumara*, the Third Circuit establishes the analytical framework for the resolution of the instant motion to transfer. The Court starts its analysis by reminding the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "'in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed.'" *Id.* (citation omitted). *See generally, Van Dusen*, 376 U.S. at 635 (where the Supreme Court refers to "the plaintiff's venue privilege"). The Third Circuit recognizes that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice . . .; whether the claim arose elsewhere . . .; the convenience of the parties as indicated by their relative physical and financial condition . . .; the convenience of the witnesses - **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora** . . .; and the location of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**) .
> . . .
>
> The public interests have included: the enforceability of the judgment . . .; practical considerations that could make the trial easy, expeditious, or inexpensive . . .; the relative administrative

6

> difficulty in the two fora resulting from court congestion . . .; the
> local interest in deciding local controversies at home . . .; the
> public policies of the fora . . .; and the familiarity of the trial judge
> with the applicable state law in diversity cases. . . .

*Id.* (citations omitted) (emphasis added). This court has previously addressed the difficulty in applying these standards to today's business disputes. *See Helicos Biosciences Corp. v. Illumina, Inc.*, Civ. No. 10-735, — F. Supp. 2d —, 2012 WL 1556390, at *4 (D. Del. May 3, 2012).

## IV. DISCUSSION

### A. The Public Interest Factors

Defendants argue that the prior litigations in the Northern District of California "tip the second, third and fifth *Jumara* public interest factors strongly in favor of transfer." (D.I. 21 at 4) On the second factor, defendants rely on Chief Judge Ware's "substantial investments in both time and resources with respect to the subject matter in this case." (*Id.* at 4-6) This is essentially mooted, however, by the Chief Judge's announced retirement planned for this very month. (D.I. 56) Thus, the court finds this factor to be neutral.

On the third factor, defendants essentially argue that this court is less equipped to handle patent cases because it is "flooded with patent cases" and suffers from "congestion" not present in California. (D.I. 21 at 6) This court has previously declined to determine whether it or the Northern District of California has the most expeditious trial calendar, but has noted that parties have represented comparable median times to trial for civil cases for both jurisdictions. *See Helicos Biosciences Corp.,* 2012 WL 1556390, at *6, n.8.

Finally, defendants argue that "HTC has asserted a licensing defense in this case which turns on the interpretation of an agreement that is governed by California contract law" – specifically, the settlement agreement reached in *Zoltar II*. (D.I. 21 at 7; D.I. 34 at 7; D.I. 35, ex. O) "HTC agrees that this court is equally well-suited to construe this agreement under California law, but merely points out that Chief Judge Ware's prior experience in *Zoltar I* and *Zoltar II* may lead to additional benefits to judicial economy because of his prior experience with the parties involved." (D.I. 34 at 7) This factor is neutral, and defendants admit that the remaining public interest factors are neutral as well. (D.I. 21 at 7)

### B. The Private Interest Factors

Regarding the private interest factors, defendants argue that, insofar as inequitable conduct is at issue in this case, the inventors will be key trial witnesses insofar as their credibility must be adjudged. (D.I. 21 at 7-8) The patents-in-suit each name two inventors: William Baringer ("Baringer"); and Dan Schlager ("Schlager"). Both Baringer and Schlager reside in California, but have submitted executed declarations to the court that they are "willing and available to travel to Delaware for the trial in this case, as needed" and are equally "willing to cooperate with counsel to provide deposition testimony at a date and time convenient for counsel, the parties and [themselves]." (D.I. 29; D.I. 30)

Defendants also argue that "employees of Qualcomm are likely to provide key testimony regarding the functionality of the chipsets at issue here and the similarities between those chipsets and the chipsets at issue in *Zoltar I and II*." (D.I. 21 at 8) Qualcomm's headquarters is located in San Diego, California. (*Id.*) At this early stage,

8

defendants have only identified one Qualcomm witness – its Director of Engineering.[4] (D.I. 34 at 4) There is no indication, however, that this potential witness or any others cannot be available for trial in Delaware. This factor is neutral, and defendants concede that the remaining private interest factors are neutral.

## V. CONCLUSION

Defendants have the burden of persuading the court, by a preponderance of the evidence, that the *Jumara* factors (as analyzed in light of the record presented by the parties at bar) warrant transfer. Insofar as no factors favor transfer in these circumstances, defendants have not tipped the scales of justice in favor of transfer, and their motion is denied. An appropriate order shall issue.

---

[4]The briefing on defendants' motion was completed on December 1, 2011. While the parties have each filed letters with the court updating it on certain matters relevant to the motion at bar, defendants have not attempted to supplement the record on this issue.

9